Argued and submitted March 8, affirmed April 4, 1989

VICKERS,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2693)

WILLIAMS et al,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2694, SC S35353 (Control))

VICKERS,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2707; SC S35352)
(Cases Consolidated)

771 P2d 268

Edward H. Howell, Judge Pro Tempore.

James C. Griggs of Harland, Ritter, Saalfeld, Griggs & Gorsuch, Salem, argued the cause and filed briefs for appellants Gerald Vickers, Lonnie D. Williams and Carol J. Williams.

William H. Martin of Gleaves, Swearingen, Larsen & Potter, Eugene, filed a brief for appellant Madelyn M. Vickers.

Jerry Bronner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PETERSON, C. J.

## PETERSON, C. J.

The issue presented is whether the shareholders of a Subchapter S corporation that has constructed a pollution control facility may apply Oregon pollution control tax credits against their personal income even after that corporation terminates its Subchapter S status. The Oregon Tax Court held that the shareholders lost this flow-through tax credit when the corporation switched from Subchapter S to ordinary C corporation status. *Vickers v. Dept. of Rev.*, 11 OTR 44 (1988). We affirm.

### I

■ "Subchapter S" corporations are small business corporations organized in compliance with the provisions of Subchapter S of the Internal Revenue Code. IRC §§ 1361 to 1379 (1982). Shareholders of small corporate businesses often select Subchapter S status because it affords relief from the "double taxation" imposed upon ordinary corporations ("C corporations"). Subchapter S status permits the owners of small businesses to enjoy the limited liability attending corporate status while retaining other advantages associated with partnerships. *See* Henn and Alexander, Laws of Corporations 134-36, § 76 (3d ed 1983).

Under federal tax law for the years at issue, all income, expenses, and credits of Subchapter S corporations flow directly to the shareholders of the corporation. The shareholders are taxed on their pro-rata share of the corporation's income. IRC §§ 1362 to 1377.

In determining Oregon taxable corporate income, Subchapter S corporations were permitted to deduct their federal taxable income. ORS 317.320. For Oregon personal income tax purposes, shareholders of Subchapter S corporations were taxed on their federal taxable income, "with such additions, subtractions and adjustments as prescribed by" ORS chapter 316. ORS 316.022(5); *see also* ORS 316.037.[1]

---

[1] The operative facts in this case occurred in 1981 and 1982. Many of the relevant provisions of the Oregon Revised Statutes have been revised since then. Unless otherwise indicated, all references are to the statutes as they existed in 1981.

## II

Emerald Forest Products Inc. ("Emerald") is a Subchapter S corporation. It installed a pollution control facility[2] at a plywood plant in 1980. Any person who constructs such a facility may receive Oregon tax benefits if the facility meets the requirements laid out in ORS 468.165 and 468.170. In 1981 Emerald applied for and received certification for pollution control tax credit under ORS 468.165 and 468.170.

Recipients of this credit must choose the manner in which they wish to receive it. ORS 468.170(5) applies to private persons and corporations alike and provided in pertinent part:

"A person receiving a certificate under this section shall make an irrevocable election to take the tax credit relief under ORS 316.097 [personal income tax] or ORS 317.072 [corporate excise (income) tax] or the ad valorem tax relief under ORS 307.405 * * *."[3]

Emerald elected to take the credit in the form of tax credit relief rather than as ad valorem tax relief.

ORS 468.170(6) specifically provides for the treatment of tax credit relief elected by Subchapter S corporations:

"If the person receiving the certificate is an electing small business corporation as defined in section 1371 of the Internal Revenue Code, and if the corporation elects to take tax credit relief, such election shall be on behalf of the corporation's shareholders. Each shareholder shall be entitled to take tax credit relief as provided in ORS 316.097, based on that shareholder's pro rata share of the certified cost of the facility."

ORS 316.097(2)(b)(A) limits the amount of the pollution control tax credit to 50% of the taxpayer's pro rata share of the facility's certified cost. It also requires the taxpayer to take the credit in equal annual shares, the number of which

---

[2] The applicable statutes, ORS 468.150 *et seq.*, use the term "pollution control facility" to describe the machinery or equipment comprising that which is installed for the purpose of reducing pollution or eliminating industrial waste.

[3] Although the term "corporate excise tax" is used with respect to ORS chapter 317, the tax is essentially one on corporate income. "Excise tax" is defined as "a tax measured by or according to net income imposed upon * * * business corporations for the privilege of carrying on and doing business in this state." ORS 317.010(5). Thus the phrase "tax credit relief under ORS 316.097 or 317.072" in ORS 468.170(5) refers to two types of income taxes.

depends on the useful life of the pollution control facility. The certified cost of Emerald's pollution control facility was $158,010, and the facility had a useful life of five years. When the facility was constructed, Emerald had three equal shareholders. Thus, under Emerald's election and under ORS 316.097(2)(b)(A) and ORS 468.170(6), each of Emerald's shareholders was entitled to a total tax credit of $26,335 to be taken over a five-year period.

Emerald changed from Subchapter S to C corporation status in December 1982. Thereafter, its shareholders (the "plaintiffs") continued to claim the pollution control tax credit on their individual income tax returns. The Oregon Department of Revenue ruled that the plaintiffs were not entitled to claim the credit on the ground that Emerald's changed corporate status transformed the credit from a personal income tax credit under ORS 316.097 to a corporate excise tax credit under ORS 317.072. The tax court affirmed and the plaintiffs appealed. This court consolidated their appeals.

### III

ORS 468.170(5) applies to individuals and corporations. An individual has a choice between an income tax credit or an ad valorem tax credit. A corporation has a choice between an excise (income) tax credit or an ad valorem tax credit. ORS 468.170(5) itself does not refer to Subchapter S corporations. ORS 468.170(6) does. It provides that an election by a Subchapter S corporation to take tax credit relief "shall be on behalf of the shareholders."

In 1981 Emerald elected irrevocably under ORS 468.170(5) to take the credit in the form of an income tax credit as prescribed in ORS 316.097. The plaintiffs assert that because this election was irrevocable, Emerald's metamorphosis from Subchapter S to C corporation status had no impact on their individual tax credits. This contention assumes that ORS 468.170(5) permits the taxpayer to make an irrevocable election among three types of tax relief: personal income tax relief under ORS 316.097; corporate excise tax relief under ORS 317.072; or ad valorem tax relief under ORS 307.405.

This assumption is incorrect. ORS 468.170(5)

requires an irrevocable election between two forms of tax relief. It provides in pertinent part that the taxpayer must choose irrevocably between "the tax credit relief under ORS 316.097 or ORS 317.072 or the ad valorem tax relief under ORS 307.405 * * *." ORS 468.170(6) then provides that if the person making the election is a Subchapter S corporation, "and if the corporation elects to take tax credit relief, such election shall be on behalf of the corporation's shareholders" who shall be entitled to tax credit relief under ORS 316.097. Significantly, ORS 468.170(6) refers to the election to take "tax credit relief." It does not suggest that there is an election between types of tax credit relief.

■■ ORS 316.097(13) buttresses the conclusion that the taxpayer may choose between income tax credit and ad valorem relief. In pertinent part, ORS 316.097(13) provides:

> "If the taxpayer *is* a shareholder of a Subchapter S corporation that has elected to take tax credit relief pursuant to ORS 468.170(6), the credit shall be computed using the shareholder's pro rata share of the corporation's certified cost of the facility." (Emphasis added.)

Like ORS 468.170(6), this provision refers simply to an election to take "tax credit relief." Use of the verb "is" indicates that the corporate shareholder-taxpayer must presently be a shareholder in a Subchapter S corporation in order to claim the flow-through tax credit against personal income. If the corporation terminates its Subchapter S status, then the shareholder-taxpayer loses the flow-through credit because he or she no longer "is" a shareholder in a Subchapter S corporation. Instead, the corporation itself is entitled to the tax credit relief.

The legislative history of ORS 468.170(5) (formerly ORS 449.635(4)), dispels any notion that the provision requires an irrevocable election among three rather than between two tax relief options. The predecessor to ORS 468.170(5) was enacted in 1967. It provided in pertinent part:

> "A person receiving a certificate under this section shall make an irrevocable election to take the tax credit relief under section 7 [personal income tax credit] or 9 [corporate excise tax credit] of this Act or the ad valorem tax relief under section 13 of this Act * * *." *See* Or Laws 1967, ch 592, § 4.

Herbert Hardy, an attorney representing the Oregon Canners,

Packers and Cold Storage Council, a proponent of the measure, testified that this provision "[r]equires the person receiving the certificate to make an irrevocable election to take the tax credit relief or the ad valorem tax relief." Minutes, House Taxation Committee, May 19, 1967 p 2. Senator Cornelius Bateson inquired whether "an election must be made to receive either the personal or corporate income tax credit." Mr. Hardy explained that this was not correct and that "an election must be made; either the tax credit or ad valorem route must be specified by the tax payer." Minutes, Senate Committee on Air & Water Quality Control, April 25, 1967 p 6. In his prepared statement to the House Taxation Committee, Mr. Hardy made this point unequivocally:

> "When a taxpayer has received certification * * * that taxpayer may *elect one of two* incentives. They are:
>
> "a)   He may elect to have that facility kept off the ad valorem tax rolls for a period of up to twenty years; or
>
> "b)   He may elect to get a tax credit under the personal income or corporate excise tax, whichever is applicable." Minutes, House Taxation Committee, May 11, 1967, Exhibit p 2 (emphasis added).

We conclude that under ORS 468.170(5) the taxpayer must elect irrevocably between tax credit relief and ad valorem relief. If the taxpayer elects tax credit relief, that relief is taken under either ORS 316.097 or 317.072, whichever is applicable. ORS 468.170(6) provides that if a Subchapter S corporation elects tax credit relief, ORS 316.097 applies and the credit flows through to the shareholders. ORS 316.097(13) makes it clear, however, that the taxpayer must presently be a shareholder in a Subchapter S corporation in order to claim the flow-through credit. Once the corporation terminates its Subchapter S status, the corporate shareholders lose the credit and ORS 317.072 applies. The corporation must then use the credit for corporate income tax relief.

The decision of the tax court is affirmed.